```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
                          DALLAS DIVISION

SOPHIA McGOWAN,                    §
                                   §
               Plaintiff,          §
                                   § Civil Action No. 3:08-CV-1988-D
VS.                                §
                                   §
MICHAEL J. ASTRUE, COMMISSIONER    §
OF THE SOCIAL SECURITY             §
ADMINISTRATION,                    §
                                   §
               Defendant.          §
```

<u>MEMORANDUM OPINION</u>

Plaintiff Sophia McGowan ("McGowan") brings this *pro se* action under §§ 205(g) and 1631(c) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. For the reasons that follow, the Commissioner's decision is affirmed.

I

McGowan applied for disability benefits on June 20, 2005, alleging that she became disabled on December 28, 2003 due to a neck injury, a finger injury, problems with her lower back and right shoulder, and asthma. The Commissioner denied McGowan's application initially and on reconsideration, and McGowan requested a hearing. When McGowan failed to appear at the first hearing, a second hearing was held on September 5, 2007 before an Administrative Law Judge ("ALJ"). McGowan testified with the

assistance of counsel. In addition, a vocational expert ("VE") was present throughout the hearing and testified with respect to McGowan's vocational background, as well as the ability of a hypothetical individual with the same vocational profile as McGowan to perform any of her past relevant work. The VE testified that the hypothetical individual was capable of returning to McGowan's past relevant work as a customer service representative and a data entry clerk. McGowan's counsel declined to cross-examine the VE.

On September 26, 2007 the ALJ issued a decision finding McGowan not disabled under the Act. The ALJ determined at step two of the sequential evaluation process that McGowan had a severe impairment: degenerative disc disease with findings of disc protrusions at the C3-C4 and C5-C6 levels and a disc protrusion at the L5-S1 level with severe hypertrophic facet joint arthropathy and mild hypertrophic facet joint arthropathy at the L4-L5 level. At step three, he found that her degenerative disc disease with disc protrusions did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found at step four that McGowan retained the residual functional capacity ("RFC") to perform on a sustained basis the exertional requirements of sedentary work with clean atmospheric environment. Based on this finding, the ALJ determined that McGowan could perform her past relevant work as a customer service representative and a data entry clerk. McGowan sought review by the Appeals

Council, which denied her request. The ALJ's decision thus became the final decision of the Commissioner.

McGowan now seeks judicial review. The court reads McGowan's *pro se* brief as arguing that the ALJ erred in evaluating her impairments and subjective complaints of pain.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or that has lasted or could be expected to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett,* 67 F.3d

at 563; *Martinez,* 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2009). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians;

(3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified."  *Id.*  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced."  *Id.*  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

McGowan essentially argues for four reasons that the ALJ erred in concluding that she is not disabled: First, contrary to the ALJ's findings, her physical impairments prevent her from performing her past work as a customer service data entry operator because she can no longer sit for long periods of time. *See, e.g.,* P. Br. 2 ("The work that I use to do (customer service data entry operator) which consisted of me sitting at least six hours per day of work, which I can no longer do.").  Second, the ALJ failed to take into account her severe depression disorder.  *See id.* at 1-2 ("Other medical conditions such as severe depression disorder which was noted by at least two different doctors mention in the initial

petition, but was not represented or mentioned in the case[.]"). Third, the ALJ erred in failing to find that McGowan's medications prohibit her from working. *See id.* at 2 ("The medications that I am currently taking for rheumatoid arthritis, back of neck pain, and severe depression, I [cannot] function in a normal work place."). Fourth, the ALJ erred in finding that McGowan's statements concerning her impairment and its impact on her ability to work are not credible because he based that determination in part on McGowan's failure to seek treatment. *See, e.g.,* R. 24 ("The record indicated that the claimant was seen by Dr. Marcum and Dr. Padilla for a one time visit, but no additional follow-up is indicated for pain treatment."). McGowan maintains that she did in fact seek treatment, but was unsuccessful in obtaining it due to lack of health insurance. *See* P. Br. at 2-3 ("I did seek treatment elsewhere, but to no avail because I did not have medical insurance.").

IV

A

The court holds that the record supports the ALJ's determination that McGowan is capable of sitting for at least six hours a day. The only examining physician who assessed McGowan's physical RFC, Phillip S. Budzenski, M.D. ("Dr. Budzenski"), opined that McGowan "should be able to perform light to medium work eight hours a day." R. 248. The results of the examination of her

joints, dorsolumbar spine, shoulder, elbows, and lower extremities were all within normal limits. *See* R. 245-48. Her lumbar flexion and extension, straight leg raising, and grip strength were all within normal limits. *See id.* And McGowan reported that her pain symptoms in her neck, back, and shoulder were controlled with taking one Ultram daily. *Id.* at 248. No physician of record opined that McGowan was incapable of sitting for extended periods of time. The only evidence to contradict Dr. Budzenski's assessment is McGowan's testimony that she cannot sit or stand more than 30 minutes at a time. The ALJ found McGowan's testimony to be incredible, however, in light of the objective medical evidence and certain prior statements that McGowan made indicating that she was not always truthful. Credibility determinations are generally the province of the ALJ, and his credibility evaluations are entitled to deference. *See Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir. 1991). And the subjective complaints of a claimant must be corroborated by objective medical evidence demonstrating the existence of the symptoms before a disability may be determined. *See Wren,* 925 F.2d at 129; 20 C.F.R. § 404.1528(a) (2009) ("[Claimant's] statements alone are not enough to establish that there is a physical or mental impairment."). The court therefore concludes that the ALJ did not err in finding that McGowan was capable of sitting for at least six hours a day.

B

McGowen contends that the ALJ failed to take into account her severe depression disorder. *See* P. Br. at 1-2 (referring to "[o]ther medical conditions such as severe depression disorder which was noted by at least two different doctors mention in the initial petition, but was not represented or mentioned in the case[.]"). The court disagrees. The ALJ noted in his decision that McGowan "was diagnosed with major depressive disorder, generalized anxiety disorder, and pain disorder associated with general medical condition." R. 23. The ALJ concluded, however, that McGowan's diagnosed depression was not a severe mental impairment that would have more than a minimal effect on her ability to perform work activities. This conclusion is supported by substantial evidence. Following McGowen's diagnosis in November 2005, she did not seek additional treatment, and the medical records did not reflect that McGowan was taking any medications for her psychiatric symptoms during the relevant period. McGowen reported during her psychological examination that she was able to perform activities of daily living, including cooking, preparing food, doing general cleaning, doing laundry, shopping, and managing money. R. 261. Nothing in the record demonstrates that McGowen's depression had more than a minimal effect on her ability to perform work activities. Accordingly, the ALJ did not err in this finding.

C

McGowen argues that the ALJ erred in failing to find that her medications prohibited her from working. *See* P. Br. at 2 ("The medications that I am currently taking for rheumatoid arthritis, back of neck pain, and severe depression, I [cannot] function in a normal work place."); *id.* ("I was very dizzy from taking my medication, which states on the label that the medications that I have to take will cause dizziness and drowsiness."). The court disagrees. Although McGowan testified that she experienced side effects (blurred vision, nausea, and dizziness) from her medications, R. 23, McGowan pointed to no objective evidence, and the court has not located any in the record, that indicates that the side effects McGowan experienced were so severe that she could "not function in a normal work place." Indeed, the physicians who examined McGowan determined that she should be able to perform light to medium work eight hours a day, and that she was able to perform daily life activities. As already noted, credibility determinations are generally the province of the ALJ, and his credibility evaluations are entitled to deference. The subjective complaints of a claimant must be corroborated by objective medical evidence demonstrating the existence of the symptoms before a disability may be determined. The court therefore holds that the ALJ did not err in failing to conclude that McGowan's medications prohibited her from working.

D

Finally, McGowan argues that the ALJ erred in finding that her statements concerning her impairment and its impact on her ability to work were not credible. She posits that the ALJ in part based this determination on McGowan's failure to seek treatment. McGowan maintains that she did seek treatment but was unsuccessful in obtaining it because she lacked health insurance. According due deference to the ALJ's credibility determinations, the court holds that there is sufficient record evidence to support the ALJ's factual findings, including credibility assessments.

McGowan's medical record is devoid of any long-term treatment for her complaints of pain in her back, right shoulders, and right hip. Although McGowan maintains that she only failed to obtain treatment because she lacked health insurance, in later visits to the emergency room in 2004 and 2005, she was treated for the following: dysuria,[1] R. 315-18; hand pain, R. 309-10; cervical adenitis[2] and headache, R. 304-05; asthma exacerbations, *see* R. 326-28; acute pelvic pain, vaginal bleeding, and possible dysfunctional uterine bleeding, R. 234-43; and tooth decay and periodontitis,[3] R. 250-54. In not one emergency room visit was

---

[1] Dysuria is the medical term for pain or discomfort when urinating.

[2] A bacterial infection of the lymph nodes of the neck.

[3] Periodontitis is inflammation and infection of the ligaments and bones that support the teeth.

- 11 -

treatment indicated for McGowan's back, neck, or shoulder pain. Therefore, although McGowan apparently knew how to seek medical care as an uninsured patient, she never once sought treatment for the back, neck, and shoulder pain of which she complains. Moreover, McGowan's physical examination in July 2005, which was essentially unremarkable, is inconsistent with McGowan's complaints. *See* § IV(A). Accordingly, the court holds that the ALJ did not err in finding that McGowan's statements concerning her impairments are not credible based in part on McGowan's failure to seek treatment for those impairments.

* * *

Accordingly, the Commissioner's decision is AFFIRMED.

August 25, 2009.

_____<br>
SIDNEY A. FITZWATER<br>
CHIEF JUDGE